COLETTE CONWAY *vs.* HERMAN SMERLING & others.[1]

No. 92-P-1204.

Essex. December 16, 1993. - July 7, 1994.

Present: KASS, KAPLAN, & GREENBERG, JJ.

*Practice, Civil,* Judgment notwithstanding verdict. *Malicious Prosecution. Unlawful Interference. Emotional Distress.*

At the trial of a claim for malicious prosecution, where the evidence established that the defendants had probable cause to make a complaint to the police and where no evidence established the defendants had any motive other than to bring suspected thieves to justice, the judge correctly granted the defendants' motion for judgment notwithstanding the verdict. [3-6]

At the trial of a claim for tortious interference with advantageous business relations, where the evidence demonstrated that a defendant, in response to an inquiry, had stated truthfully that a police investigation was connected to a former employee's leave-taking and where no improper purpose was shown in his making the statement, the motion of the defendants (the employer and its two principals) for judgment notwithstanding the verdict should have been allowed. [7-8]

---

[1]David Smerling and Eclipse Sleep Products of New England, Inc.

At the trial of a claim for intentional infliction of emotional distress, the judge correctly granted the defendants' motion for judgment notwithstanding the verdict where the conduct proved (the investigation and reporting to police of a suspected embezzlement founded in reasonable apprehension based on objective facts) was not in any sense the "extreme and outrageous" conduct necessary to support the claim. [8-9]

CIVIL ACTION commenced in the Superior Court Department on January 6, 1989.

The case was tried before *David M. Roseman*, J.

*Ellen S. Shapiro* for the plaintiff.

*John L. Kerr* for the defendants.

KASS, J. In the face of what she anticipated was an impending discharge, the plaintiff Colette Conway quit her job as bookkeeper at the Associated Sleep Industries (ASI) division of the defendant Eclipse Sleep Products of New England, Inc. (Eclipse). The circumstances of Conway's departure involved assertions by her employer that she had diverted inventory and sold it for her own account or, at the least, had collaborated with ASI's shipping manager in selling company inventory for *his* account. An employment agency, whose assistance Conway had sought in finding a new job, inquired of Eclipse's president, David Smerling, why he would not rehire Conway. Smerling, who had given Conway high marks for capability, answered, "Well, let me just say that the circumstances surrounding Ms. Conway's leaving is the subject of an investigation by the Chelsea Police Department."

Conway launched a four-barreled lawsuit involving claims of 1) defamation; 2) malicious prosecution; 3) tortious interference with advantageous business relationships; and 4) intentional infliction of emotional distress. A jury brought in a verdict for the defendants on the defamation count. On malicious prosecution, the jury returned a verdict for the plaintiff of $40,000; on tortious interference, $20,000; and on intentional infliction of emotional distress, $60,000. The defendants made a motion for judgment notwithstanding the verdict, which the judge allowed as to all defendants on the

counts for malicious prosecution and intentional infliction of emotional distress. On the tortious interference claim, the judge granted judgment n.o.v. only as to Herman Smerling (a principal of Eclipse). Both sides have appealed. We conclude that judgment n.o.v. should have been allowed as to all the defendants on all the counts, and, therefore, we affirm in part and reverse in part.

Our task in review is to consider whether any evidence, considered in the light most favorable to the plaintiff, the nonmoving party, permits a reasonable inference in favor of the plaintiff on the three counts for which the jury returned favorable findings. *Forlano* v. *Hughes*, 393 Mass. 502, 504 (1984). *O'Shaughnessy* v. *Besse*, 7 Mass. App. Ct. 727, 728-729 (1979), and cases cited. We do not weigh the evidence or consider the credibility of witnesses. *Rubel* v. *Hayden, Harding & Buchanan, Inc.*, 15 Mass. App. Ct. 252, 254 (1983). Evidence that contradicts the testimony of the nonmoving party is to be ignored. *Bennett* v. *Winthrop Community Hosp.*, 21 Mass. App. Ct. 979, 982 (1986).

1. *Malicious prosecution.* Central to the tort of malicious prosecution is that the actor to be held liable must have made perverse use of the litigation process by instigating criminal proceedings without probable cause and primarily for a purpose other than bringing the targeted person to justice. *Lincoln* v. *Shea*, 361 Mass. 1, 4-5 (1972). *Bednarz* v. *Bednarz*, 27 Mass. App. Ct. 668, 669 (1989). *Silvia* v. *Building Inspector of W. Bridgewater*, 35 Mass. App. Ct. 451, 453-454 (1993). Restatement (Second) of Torts §§ 653, 662, 668 (1976). Although distinct from the tort of abuse of process, see *Bednarz* v. *Bednarz, supra* at 669, 673, there is in malicious prosecution the common ingredient of an improper purpose, i.e., using court proceedings primarily to gain a private advantage, because of hostility and ill will, and without belief by the accuser in the guilt of the accused. Restatement (Second) of Torts § 668 comments e-g.

Herman and David Smerling, the principals of ASI, learned from an accounts receivable clerk that she had observed merchandise being sold for cash by the shipping man-

ager and Conway and that the cash had not been turned over
to her for deposit to the company's account. David Smerling
made inventory and accounting examinations. To test the hy-
pothesis that the shipping manager and Conway were selling
goods for their account and doctoring the inventory records,
David Smerling provided the accounts receivable clerk with
$300 to buy bedding for a "friend." She received the goods
but the money did not turn up in the company account. The
shipping manager was fired on May 31, 1988. Conway, ob-
serving that locks were being changed and that a representa-
tive from the company's accountants was writing up job de-
scriptions for office personnel, sensed she was to be "let go"
(although when confronted, Herman Smerling told her that
he was not yet ready to discuss that). She left her job early
that same day (June 26, 1988) and never came back.

Early in July, a Chelsea police officer came to the com-
pany to buy bedding for his personal use. David Smerling
had a conversation with the officer about his concern that his
company had suffered an embezzlement. That conversation
led to inquiry by Detective Frank Garvin of the Chelsea po-
lice. Garvin began an investigation which he later turned
over to Detective Jack Urbaczewski. The latter did not un-
derstand the mechanics of the purported inventory and cash
diversions and ultimately decided — because of continuing
inquiry by the Smerlings about the progress of the investiga-
tion — to apply to a clerk-magistrate for a criminal com-
plaint against Conway (among others) and "let the clerk de-
cide it." Those contacts with the police by David Smerling
are the basis of the malicious prosecution claim.

If a citizen registers with the police an apprehension that a
crime has been committed and leaves the matter to the judg-
ment and responsibility of the public officers, that citizen,
though having started the chain of events that led to legal
process, cannot be charged with malicious prosecution. *See-
lig* v. *Harvard Coop. Soc.*, 355 Mass. 532, 536 (1969). *Cor-
rellas* v. *Viveiros*, 410 Mass. 314, 318 (1991). *Carroll* v. *Gil-
lespie*, 14 Mass. App. Ct. 12, 25 (1982). If, on the other
hand, the citizen presses the police to apply for a complaint,

an action for malicious prosecution lies against the importuning citizen (provided, of course, that all other elements of the tort are present). *Ibid.* Although the evidence suggests that the Smerlings did no more than inquire about the progress of an investigation, taking that evidence most favorably to the plaintiff, it could be said that they were the instrument of the complaint.

For purposes of analysis in malicious prosecution cases, the negative prerequisite of want of probable cause to complain has been taken to mean a lack of probable cause so obvious that an inference is warranted that the complaint was made with malice. *Beecy* v. *Pucciarelli*, 387 Mass. 589, 593-594 (1982). *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 100-101 (1987). The standard is an objective one in the sense that if the facts would justify a reasonable person in thinking that a crime had been committed, then a complaint to the police is warranted, *Carroll* v. *Gillespie*, 14 Mass. App. Ct. at 19, and, indeed, ought not to be discouraged by fear of subjecting the complainant to a lawsuit. *Ziemba* v. *Fo'cs'le, Inc.*, 19 Mass. App. Ct. 484, 488 (1985). *Bednarz* v. *Bednarz*, 27 Mass. App. Ct. at 673.

Here, the defendants had been told by more than one employee that Conway, with others, had been "running her own business" inside the company for years. David Smerling had examined the books and the inventory records, and these seemed to confirm sales of product that generated no discernible proceeds to the company. Finally, he conducted the test sale through the accounts receivable clerk, and that verified the information previously received and the fruits of earlier investigation. In the circumstances, the Smerlings reasonably could apprehend that the plaintiff and the shipping manager had stolen from the company. That the clerk-magistrate failed to find probable cause to issue a criminal complaint is not dispositive. Contrast Restatement (Second) of Torts § 663. That official's criteria for finding probable cause would be more constrained by the rigor of rules of evidence. Detective Urbaczewski testified that he had difficulty understanding what Eclipse's business records meant. White collar

crime manifestly was not his metier and, by his own description, the basis given by him for issuance of a complaint lacked precision.

If, however, the story of theft told to the police by David Smerling were an invention, cooked up to achieve some collateral objective, the element of malice inherent in the tort would be established. In such a case, the defendants would know there was *no* cause to complain to the authorities, let alone a probable cause, and one would reasonably conclude that the complainant had an improper purpose, such as obtaining private advantage. To the end of so proving, the plaintiff adduced evidence through former employees that the Smerlings themselves had conducted cash sales and doctored records to cover them up. Assuming, as we must, that it had been proved that the Smerlings had, indeed, engaged in off-the-books cash sales (they staunchly denied it) of merchandise, that fact does not prove the additional fact that they had invented the charge against Conway and her accomplices to divert attention from their own misconduct. The jury's verdict for the defendants on the defamation count is at least highly suggestive that the jurors did not think the defendants' charge was false. In any event, there was no evidence that the Smerlings's misconduct, if it were a fact, had been discovered, that any public authority, e.g., the tax collector, was closing in, or that the situation of the defendants would be improved by inviting the police to prowl around the company's books. The plaintiff's theory of the case on this score was pure hypothesis, without evidentiary support. See *Laurendeau* v. *Kewaunee Scientific Equip. Corp.*, 17 Mass. App. Ct. 113, 123 (1983) (evidence did not warrant an inference, based on possibilities rather than probabilities, that recommendations were tainted by malice).

With probable cause on the part of the defendants established and no evidence having been adduced that the defendants, in mentioning the matter to the police, had a purpose other than bringing suspected thieves to justice, the trial judge stood on two solid grounds in allowing the motion for judgment n.o.v.

2. *Tortious interference with advantageous business relations*. Jody Durham Talbot was the principal of Aaron Personnel, Inc., to which Conway had applied for employment placement. Talbot called David Smerling, as Conway's most recent employer, for reference data. Common to the account that Talbot and David Smerling, respectively, gave of their conversation about Conway, was that Smerling praised Conway's intelligence, efficiency, attendance, and punctuality. He volunteered no negative comment and said she had not been fired but left her job. Asked if he would rehire Conway, he said, "No." Pressed about why he would not, he made the reply set out at the beginning of this opinion, which adverted to a police investigation. It is the statement that a police investigation was connected to her leave-taking that Conway makes the basis of her claim of tortious interference with advantageous business relationships. The advantageous business relationships that Conway complained had been interfered with were those potential employment opportunities to which she might have been introduced[2] but for her lack of a clean reference from the defendants.[3]

An essential element of wrongful interference with advantageous business relationships is that the defendant has acted without lawful cause. *Grammenos* v. *Zolotas*, 356 Mass. 594, 597 (1970). *Chemawa Country Golf, Inc.* v. *Wnuk*, 9 Mass. App. Ct. 506, 510 (1980). Here, as in our discussion of malicious prosecution, the question arises whether Smerling's harmful statement about Conway sprang from an improper purpose. As we saw in that discussion, Smerling had reason to suppose that Conway had been a party to embezzlement at his company and the facts stated to Talbot were true. In response to an inquiry about a former employee, Smerling had a privilege, if not a duty, to speak the truth even if the disclosure of the facts might negatively af-

---

[2]We do not decide whether unparticularized prospects of employment constitute an advantageous relationship.

[3]Conway explained to Talbot that her boyfriend had stolen mattresses and that she had been accused of covering up his theft by inventory adjustments.

fect the subject's job prospects. *Burns* v. *Barry*, 353 Mass.
115, 119 (1967). *Judd* v. *McCormack*, 27 Mass. App. Ct.
167, 173 (1989). See *Correllas* v. *Viveiros*, 410 Mass. at
320-323, for a discussion of when the privilege is absolute
and when conditional. Here, the privilege would have been
abused if the purpose of the defendants had been to besmirch
Conway to disguise their own dereliction. Of such purpose,
as we concluded in the previous section of this opinion, there
was insufficient evidence. Judgment n.o.v. should have been
ordered as to all the defendants.

3. *Intentional infliction of emotional distress.* To make a
case of intentional infliction of emotional distress, it is neces-
sary "(1) that the actor intended to inflict emotional distress
or that he knew or should have known that emotional distress
was the likely result of [the] conduct, . . . (2) that the con-
duct was 'extreme and outrageous,' was 'beyond all possible
bounds of decency' and was 'utterly intolerable in a civilized
community,' . . . (3) that the actions of the defendant were
the cause of the plaintiff's distress, . . . and (4) that the
emotional distress sustained by the plaintiff was 'severe' and
of a nature 'that no reasonable [person] could be expected to
endure it.'" *Agis* v. *Howard Johnson Co.*, 371 Mass. 140,
144-145 (1976).[4]

In granting the defense motion for judgment n.o.v., the
trial judge particularly relied on *Foley* v. *Polaroid Corp.*,
400 Mass. at 99, which emphasized the appalling nature of
the conduct required to trigger the tort. "Outrageous" is a
word somewhat debased in current usage, but as employed in
the *Agis* opinion it meant more than workaday insults, an-
noyances, or even threats and petty oppressions. *Ibid.* Re-
statement (Second) of Torts § 46 comment d. It means, for
example, a high order of reckless ruthlessness or deliberate
malevolence that, as the *Agis* and *Foley* opinions say, is sim-
ply intolerable. Nothing remotely approaching profoundly
shocking conduct occurred in this case. Compare illustrations
to Restatement (Second) of Torts § 46 comments d, e, and f.

---

[4]The internal quotations are from Restatement (Second) of Torts § 46
comments d and j (1965).

As previously said in this opinion, the investigation and reporting of the suspected embezzlement was founded in reasonable apprehension based on objective facts and, to that degree, privileged. In any event, the Smerlings handled Conway with comparative graciousness. They did not fire her, vilify her, or take steps to maximize her shame in the eyes of coworkers. They did not harass her on the job or thereafter. In an interview that Conway requested after the adverse report to Talbot and which Herman Smerling agreed to, he was restrained, even putting the harshest possible face on his conduct on that occasion. See *Foley* v. *Polaroid Corp.*, 400 Mass. at 100.

The judgment for the defendants on count III of the complaint, malicious prosecution, is affirmed; the judgment for the defendants on count IV, intentional infliction of emotional distress, is affirmed; the judgment for the plaintiff against David Smerling and Eclipse Sleep Products of New England, Inc., on count I, intentional interference with advantageous business relationships, is reversed and a judgment for all the defendants is to enter on count I. Count II, for defamation, which resulted in a judgment for the defendants by reason of the jury verdict, was not a subject of appeal and stands.

*So ordered.*