Brown, J.
A Superior Court jury returned a verdict, based on answers to special questions, in favor of the plaintiff-in-counterclaim Richard J. Ware (Ware or the plaintiff), doing business as Mass Sealcoat and Maintenance (Mass Sealcoat), that the defendants-in-counterclaim, Gene Beliveau and Plymouth County Paving, LLC (collectively, defendants), converted personal property owned by Ware and that Beliveau breached a fiduciary duty owed *616 to him. The jury awarded damages of $40,000 to Ware.[3]
The defendants appeal from the orders denying their postjudgment motions and from the judgment. We affirm the orders.
1. Procedural point. We address a procedural issue sua sponte prior to discussing the merits of the appeal. It is well established that “an appeal founded on a notice of appeal filed prior to disposition of a postjudgment motion under Mass.R.Civ.P. 50(b), 52(b), or 59 is a nullity and shall be dismissed.” Blackburn v. Blackburn, 22 Mass. App. Ct. 633, 634-635 (1986), quoting from Anthony v. Anthony, 21 Mass. App. Ct. 299, 302 (1985). “A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above.” Mass.R.A.R 4(a), as amended, 464 Mass. 1601 (2013).
The jury verdict was entered on June 8, 2012, and after filing on June 18, 2012, a notice of intent to file postjudgment motions, on June 25, 2012, the defendants filed three postjudgment motions: motion for a new trial, motion for judgment notwithstanding the verdict, and motion to alter or amend the judgment. The next day they filed a notice of appeal from the judgment. The defendants’ postjudgment motions were denied by the trial judge, and the defendants filed a notice of appeal from each denial of their postjudgment motions. Those appeal notices did not reference the notice of appeal filed on June 26, 2012, and dealt only with the denials of the postjudgment motions. A new notice of appeal from the judgment was never filed. Accordingly, the defendants’ appeal of the judgment is a nullity and we are left to consider only the denials of their postjudgment motions.
2. Facts. In reviewing the denial of a motion for judgment notwithstanding the verdict or a directed verdict, the question is whether “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.” Zaniboni v. Massachusetts Trial Ct., 81 Mass. App. Ct. 216, 217 (2012), quoting from Doe v. Senechal, 66 Mass. App. Ct. 68, 76 (2006). Evidence favorable to the defendant should be disregarded and the verdict “sustained if the plaintiff offered any evidence from which the jury could have reasonably reached their verdict.” Id. at 218. Beliveau did not object to the special verdict *617 questions concerning conversion or to the jury instructions on the subject. See Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974).
We therefore recite the facts in the light most favorable to the plaintiff. In 2005, Beliveau and Ware set up a limited liability company, Massachusetts Property Maintenance, LLC (MPM), to serve as a funnel company to find and subcontract work for Beliveau’s company, Plymouth County Paving, LLC (Plymouth Paving), and Ware’s companies, Mass Sealcoat and Ware Landscaping. They initiated an operating agreement whereby each would have fifty percent ownership interest in MPM and would act as managers and members of the company. Beliveau was the designated tax agent for MPM, and the operating agreement had no end date stipulated.
In late November, 2006, after a dispute between Ware and Beliveau involving one of Ware’s largest clients, Ware informed Beliveau that he no longer wanted to continue MPM. On December 5, 2006, Ware and Beliveau met and Beliveau presented Ware with a written agreement to terminate the MPM operating agreement. The agreement stipulated that for the remainder of a certain snowplowing contract, performed jointly as MPM, ending April 30, 2007, Plymouth Paving would perform the duties of snowplowing and sanding; invoice Ware promptly after each event; and anticipate payment within forty days. Both parties signed the agreement and agreed orally that they would meet after the snowplowing season ended to sell the MPM equipment and divide the proceeds equally.
MPM’s books closed on February 13, 2007, and no checks were cut after that date to creditors or others. There was no debt owed, and Plymouth Paving was paid in full for its services. When Ware tried to contact Beliveau regarding the sale of the MPM equipment, Beliveau failed to respond to his inquiries and changed the locks to MPM’s premises. Neither party took further steps to formally dissolve MPM or sell the equipment. Instead of selling the MPM equipment, Beliveau used it for the benefit of Plymouth Paving. ■
3. Discussion. On appeal, the defendants press certain points that were not raised during the hearing on their postjudgment motions. The primary claim pressed here is that there was no evidentiary basis to show that Beliveau personally controlled the equipment as opposed to Plymouth Paving, of which he was a *618 principal.[4] He argues that the “sole” evidence at trial was that Plymouth Paving used the equipment and Plymouth Paving, not Beliveau personally, was the signatory to the December 5, 2006, agreement to dissolve MPM. We conclude otherwise, particularly in light of the jury verdict on disputed evidence.
a. Conversion. In order to establish conversion a plaintiff must demonstrate that the defendant “intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time.” Grand Pac. Fin. Corp. v. Brauer, 57 Mass. App. Ct. 407, 412 (2003). Stated differently, the plaintiff must set forth facts sufficient to support an inference that he had either the right to immediate possession or title to the property allegedly converted. See Mazeikis v. Sidlauskas, 346 Mass. 539, 544 (1963). Upon review of the record, we discern no reversible error.
Citing G. L. c. 156C, § 38,[5] the Massachusetts Limited Liability Company Act (for which there is little case law), the defendants contend that the termination of the MPM operating agreement did not dissolve MPM, as the process of winding up and dissolution still needed to take place.[6] In addition, they contend, as they did in their posttrial motions, that the plaintiff never owned the equipment or had a right to possess the property owned by MPM. Even though it is not free from doubt that this point was properly preserved on appeal or adequately raised in the course of the posttrial proceedings, see Rotkiewicz v. Sandowsky, 431 Mass. 748, 751 (2000); Moy v. Jack Madden Ford Sales, Inc., 4 Mass. App. Ct. 102, 108 (1976), we will consider this novel issue here. “In determining whether there is an inconsistency in the jury’s answers [to special questions], [we view] the answers . . . in . . . light of the attendant circumstances, including the pleadings, issues submitted, and the judge’s instructions.”[7] Ward v. Perna, 69 Mass. App. Ct. 532, 536 (2007).
*619 General Laws c. 156C, §§ 43,[8] 45(6), and 46, prescribe the process of winding up and dissolving a limited liability company. Here, however, the December 5, 2006, agreement not only terminated the MPM operating agreement, but also modified it by specifying a time in which MPM would cease to exist. The oral agreement[9] made subsequent to the signing of the December 5, 2006, termination agreement is a further modification of the original operating agreement. See Cambridgeport Sav. Bank v. Boersner, 413 Mass. 432, 439 (1992) (“The mode of performance required by a written contract may be varied by a subsequent oral agreement based upon a valid consideration”). When reviewing the operating agreement in conjunction with the December 5, 2006, termination agreement and the subsequent oral agreement, it is clear that upon the conclusion of the snowplowing season Ware became a fifty percent owner of the MPM equipment. As such, Beliveau had an obligation to sell the MPM equipment and split the proceeds with Ware.
Beliveau appears to have been too clever by half; he attempts to use c. 156C as a sword and a shield. General Laws c. 156C, § 43, requires a formal “winding up” of the affairs of a limited liability company, but Beliveau, by his actions, prevented any possible dissolution of MPM.[10]
We thus discern no error. Even though the award of damages would seem more appropriate for a breach of contract,[11] Beliveau’s actions of locking Ware out and using the MPM equipment for the benefit of his company, Plymouth Paving, provide a sufficient basis upon which the jury could find this conduct amounted to conversion.[12] See Cahaly v. Benistar Property Exch. Trust Co.,
*620 68 Mass. App. Ct. 668, 679-680 (2007).
b. Damages. The defendants contend that there was insufficient evidence proffered at trial concerning damages. We think that sufficient evidence of damages may permissibly be determined, in substantial part, from the testimony of both Beliveau and Ware. Beliveau testified that he provided MPM with about $100,000 to purchase equipment, and was later reimbursed. Ware testified that the MPM equipment was valued at around $100,000. Although the amount of damages rarely can be proved with a mathematical certainty, Carlo Bianchi & Co. v. Builders’ Equip. & Supplies Co., 347 Mass. 636, 646 (1964), here the jury could have properly weighed the testimony and deducted for wear and tear. We find no error.
Deciding as we do, we do not address whether Ware could have properly pursued a derivative claim in his capacity as a MPM member.[13]

Orders denying postjudgment motions affirmed.

Appeal filed June 26, 2012, dismissed.

The verdict also included a finding by the jury that the plaintiff breached a fiduciary duty owed to the defendants, but that no damages resulted.

We note, in passing, that it does not appear that the case was tried on the basis of piercing the corporate veil to establish Beliveau’s personal liability.

General Laws c. 156C, § 38, inserted by St. 1995, c. 281, § 18, provides, “A limited liability company interest is personal property. A member has no interest in specific limited liability company property.”

See Mukon v. Gollnick, 151 Conn. App. 126, 131-132 (2014).

The jury answered yes to special question number sixteen, which asks, “Was Richard Ware damaged as a result of Gene Beliveau and/or Plymouth County Paving’s conversion?”

General Laws c. 156C, § 43, inserted by St. 1995, c. 281, § 18, provides in relevant part, “A limited liability company is dissolved and its affairs shall be wound up upon ... the written consent of all members.”

It is fair to conclude on the record that this oral agreement was executed by Beliveau in his personal capacity.

As mentioned above, Beliveau not only did not sell the MPM equipment as he had agreed, but also refused to respond to any of Ware’s communications, changed the locks to MPM’s property, and then continued to use the equipment for his own personal benefit.

In light of the judge’s conversion instruction, we have no need to harmonize the jury’s answers to special questions. See Palriwala v. Palriwala Corp., 64 Mass. App. Ct. 663, 669-671 (2005).

The jury also could reasonably have based their conversion finding on Beliveau’s continued possession of the equipment after the end of the snowplowing season.

The plaintiff’s request for an award of double costs is denied.