# DECISIONS

OF THE

## APPEALS COURT

OF

## MASSACHUSETTS

ERIC PIDERIT *vs.* SIEGAL & SONS INVESTMENTS, LTD.

No. 98-P-1898.

Middlesex. October 17, 2000. - May 30, 2002.

Present: ARMSTRONG, C.J., BECK, & RAPOZA, JJ.

*Workers' Compensation Act,* Claim. *Employment,* Termination, Retaliation.

In an action by an employee alleging unlawful discharge in violation of G. L. c. 152, § 75B(2), prohibiting retaliation for exercising rights under the Workers' Compensation Act, in which the employee's discharge occurred shortly after he told his employer that he had been injured, but several months before he filed a claim for workers' compensation benefits, the judge properly ordered summary judgment for the employer, where the employee failed to show that his discharge was related to workers' compensation. [3-6]

CIVIL ACTION commenced in the Superior Court Department on April 12, 1996.

The case was heard by *Martha B. Sosman*, J., on a motion for summary judgment.

*Howard I. Rosen* for the plaintiff.

*Stanley W. Wheatley* for the defendant.

ARMSTRONG, C.J. This appeal comes to us following the allowance of a motion for summary judgment brought by the defendant, doing business as Marty's Liquors, and the ensuing dismissal of the plaintiff's claim that he was discharged unlawfully. The discharge, he claimed, violated G. L. c. 152, § 75B(2), which prohibits retaliation for exercising rights under the Workers' Compensation Act. Viewing the facts alleged in the summary judgment materials in the plaintiff's favor, as we must at this stage, we take the facts to be as next stated.

The plaintiff was one of two "store managers" at Marty's Liquors in Allston. On Tuesday evening, August 1, 1995, the plaintiff felt shooting pains in his left knee while lifting kegs of beer. He mentioned the episode to coemployees. Despite a swollen knee, he continued working the remaining days of the week. At a company picnic on Sunday, August 6, he stopped playing softball due to pain in the knee. The next day, with the grudging approval of Lewis Siegal, his supervisor (and part owner), he left work before his shift ended to see a doctor at the company's health coverage provider, Harvard Community Health. The doctor advised the plaintiff to stay out of work for several days and referred him to an orthopedic specialist who, on Wednesday, August 9, said he should remain out of work for ten days. Lewis Siegal, when so advised, was irritated and told the plaintiff to call "Marty" Siegal (Lewis's father and company president). Marty said ten days was a long time, that he would have to replace the plaintiff, and asked the plaintiff to get his Allston store keys back to the store. The plaintiff understood the import of the conversation to be that he was discharged, and the judge, for purposes of ruling on the motion for summary judgment, necessarily took that to be the fact.[1]

The plaintiff filed a claim on August 29, just over three weeks

---

[1] This point is sharply disputed by Marty Siegal, who maintains that, for such a long absence, and particularly because the ten days would lead up to the plaintiff's long-scheduled vacation trip to Venezuela, Marty himself would have to fill in temporarily for the plaintiff and would need the plaintiff's store keys. No discharge was intended. Marty Siegal pointed out that the company went on paying the plaintiff's health and dental coverages and disability insur-

later, for benefits under the company's short term disability benefits insurance policy. The store processed the application, but the claim was rejected by the insurer. On the application form the plaintiff indicated for the first time that he intended to file a claim for workers' compensation benefits. The plaintiff filled out a claim form for such benefits on October 21, claiming total disability. The form was not filed with the Department of Industrial Accidents until December 21, after his claim for short term disability benefits had been rejected by the disability insurer. The department ultimately awarded partial disability benefits from August 12 to December 4, the final day the plaintiff claimed to have been disabled.[2]

The basis on which the judge ordered summary judgment for the defendant was this: At the time of the plaintiff's discharge, the judge ruled, the plaintiff as matter of law had not "exercised a right afforded by [chapter 152]," as required by § 75B(2).[3] The discharge was on August 9, but no claim for workers' compensation benefits was filed with the Department of Industrial Accidents until several months later; and while it is true that § 10(1) of the chapter does not permit such a claim to be filed earlier than the thirtieth day after the onset of the disability, this discharge occurred on the second day of the disability, well before the defendant was required even to file a notice of injury with the insurer or the department. See c. 152, § 6. The judge ruled that merely telling an employer that one has been injured is not an exercise of a right under the statute; and the judge with some plausibility ruled that, "[a]s a matter of statutory interpretation, § 75B(2) does not prevent actions against workers on account of their *injuries*, but only protects them from retaliation for having 'exercised a right afforded by this chapter.' "[4]

The judge reached the right result in dismissing the action,

---

ance premiums well into November, when it finally concluded that the plaintiff had no intention of returning.

[2]Thereafter, the plaintiff received thirty weeks of unemployment benefits.

[3]In relevant part, § 75B(2) reads: "No employer . . . shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by this chapter . . . ."

[4]In relevant part, § 75B(1) protects, as a qualified handicapped person under G. L. c. 151B, "an employee who has sustained a work-related injury

although we rest our affirmance on a narrower ground than she. The argument raised by the plaintiff against the judge's reasoning turns on the incentive it provides for preemptive discharges of injured employees, before they have had a chance to make claims for workers' compensation. Such a discharge might not avoid the particular claim, as the injury would normally remain compensable regardless of the discharge (this case is an illustration); but the injury may be thought by the employer to leave the employee vulnerable to future injuries, if it leaves a chronic weakness (as in a back or a knee, for example) and hence heightened exposure to future workers' compensation claims. The practical effect of § 75B(2) as construed by the judge would thus be (so the plaintiff argues) to make injured workers more vulnerable to discharge of the preemptive variety, contrary to the manifest intent of the Legislature.

Many States have statutes comparable to § 75B(2), and their judicial decisions have often adopted variations of the plaintiff's argument. Some have done so by ruling that an injured employee has exercised a right afforded by the statute if he has[6] filled out the notice-of-injury form and been paid benefits as a result, even though he has not filed a claim with the workers' compensation board. See, e.g., *Overnight Transp. Co.* v. *Gaddis*, 793 S.W.2d 129, 130-132 (Ky. App. 1990); *Texas Steel Co.* v. *Douglas*, 533 S.W.2d 111, 114-117 (Tex. App. 1976). Other decisions have treated the act of filling out the notice-of-injury form as constituting the requisite exercise of a right, and still others, going further, have treated the employee's act of merely telling the employer that he has been injured as "exercis[ing] a right afforded by [the State's § 75B(2) counterpart]." See, e.g., *Worsham Steel Co.* v. *Arias*, 831 S.W.2d 81, 83-85 (Tex. App. 1992).

Still other decisions recognize a cause of action for retaliatory discharge although the discharge preceded any action that could be characterized as an exercise of a right under the statute;

and is capable of performing the essential functions of a particular job, or who would be capable . . . with reasonable accommodations . . . ." The judge observed that if the plaintiff had a viable cause of action under subsection (1), he waived it by failing to pursue the administrative remedy (before the Massachusetts Commission against Discrimination) afforded for such violations. Cf. *Hallgren* v. *Integrated Financial Corp.*, 42 Mass. App. Ct. 686 (1997).

but in such cases there is generally independent evidence that the employer's motive for the discharge was to prevent claims from being filed under the statute. See, e.g., *Wolcowicz* v. *Inter-craft Indus. Corp.*, 133 Ill. App. 3d 157, 160 (1985) (two days after suffering second injury in six months, the plaintiff was discharged and given one year's severance pay for signing waiver of all claims against the defendant); *Wright* v. *Fiber Indus., Inc.*, 60 N.C. App. 486, 487, 488-491 (1983) (while in the hospital, the plaintiff was visited by employees who told him falsely that the company had filed a workers' compensation claim for him that had been denied and then, after his discharge, told him that he had no rights except under the employer's private insurance policy, and, finally, tried unsuccessfully to get the plaintiff to sign a document acknowledging that he had fully recovered from his injury before he had resumed work); *Abels* v. *Renfro Corp.*, 335 N.C. 209, 216 (1993) (evidence permitted inference that the employer, having earlier escaped a workers' compensation claim by continuing the plaintiff at full pay for performing light duties, concluded upon the plaintiff's second injury and upon learning that her doctor was recommending that she take a one-month leave of absence, that the best course was to discharge the plaintiff to forestall an anticipated filing of a claim). Indeed, the only Massachusetts case that has been called to our attention appears to be of this variety: *Ourfalian* v. *Aro Mfg. Co.*, 31 Mass. App. Ct. 294, 296-297 (1991) (although plaintiff had filed no compensation claim by time of discharge, the complaint alleged that the employer had fired several other employees for filing such claims).

In the present case, however, we need not decide whether the plaintiff had or had not exercised a right under G. L. c. 152 when he was discharged or whether a showing that he had exercised such a right was a precondition for making out a case under § 75B(2). Here, the plaintiff fails for want of any showing in the summary judgment materials that his discharge was related to workers' compensation. On the evidence presented, a conclusion that the defendant discharged the plaintiff to avoid a workers' compensation claim would be based solely on the fact that the plaintiff was discharged shortly after sustaining an injury. In this respect the case before us is like *Horton* v. *Miller*

*Chemical Co.*, 776 F.2d 1351, 1356 (7th Cir. 1985), cert. denied, 475 U.S. 1122 (1986), a case decided under Illinois law, in which the plaintiff, the court decided, had shown no more than that he was injured and that the employer had discharged him ostensibly for the resultant inability to meet the employer's expectations for the job. The evidence offered by this plaintiff at summary judgment was, if anything, even more attenuated than that shown in the *Horton* case. We agree with the trial judge that, in these circumstances, recognizing the plaintiff's showing as sufficient would in practical effect convert § 75B(2) into a prohibition on discharging injured employees. The wording of § 75B(2) does not support such a reading.

*Judgment affirmed.*