ANGEL MERCADO vs. MANNY'S T.V. AND APPLIANCE, INC.

No. 09-P-520.

Hampden. April 7, 2010. - June 28, 2010.

Present: MILLS, SMITH, & TRAINOR, JJ.

*Practice, Civil,* Directed verdict. *Public Policy. Employment,* Termination, Retaliation. *Contract,* Employment. *Anti-Discrimination Law,* Handicap. *Family and Medical Leave Act. Words,* "Handicap."

At the trial of a civil action brought by a plaintiff alleging that his former employer (defendant) had wrongfully discharged him in violation of public policy, the judge erred in granting a directed verdict in favor of the defendant, where a fact finder could conclude that the work performed by the plaintiff at the defendant's direction (i.e., installing appliances without an electrical or plumbing license) was a violation of public policy and that the defendant terminated the plaintiff's employment because the plaintiff did not want to continue violating that policy. [139-141]

A plaintiff alleging employment discrimination on the basis of handicap in violation of G. L. c. 151B, as well as violations of the Family and Medical Leave Act (act), failed to demonstrate that his knee injury constituted a "handicap" within the meaning of G. L. c. 151B [142] or a "serious health condition" within the meaning of the act [143-144].

A former employee could not maintain a claim of retaliatory termination of employment based on the filing of a worker's compensation claim, in violation of G. L. c. 152, § 75B(2), where the employee had taken no action under the worker's compensation act until after the termination of his employment. [144]

The plaintiff in a civil action alleging, inter alia, employment discrimination on the basis of handicap failed to demonstrate that the trial judge's exclusion from evidence of an employee handbook, even if error, was prejudicial to his case. [144]

CIVIL ACTION commenced in the Superior Court Department on March 27, 2006.

The case was tried before *Constance M. Sweeney,* J.

*Michael O. Shea* for the plaintiff.

*John B. Stewart* (*F. Michael Joseph* with him) for the defendant.

SMITH, J. After the termination of his employment by the defendant, Manny's T.V. and Appliance, Inc. (Manny's), the plaintiff, Angel Mercado, filed a complaint in Superior Court alleging, inter alia, (1) discriminatory and retaliatory termination based on his handicap in violation of G. L. c. 151B; (2) retaliatory termination based on the filing of a worker's compensation claim in violation of G. L. c. 152, § 75B(2); and (3) violations of the Family and Medical Leave Act (FMLA). An amended complaint further alleged that Mercado was wrongfully terminated in violation of public policy.[1] Following the presentation of Mercado's case to a jury, Manny's moved for a directed verdict as to each of the enumerated claims. The judge granted the motion. On appeal, Mercado claims that the judge committed error in allowing Manny's motion for a directed verdict on Mercado's claims. He also claims that the judge improperly excluded an employee handbook from evidence.

*Background.* We recite the relevant facts in the light most favorable to the plaintiff. *Bonin* v. *Chestnut Hill Towers Realty Corp.*, 392 Mass. 58, 59 (1984). Between October, 2000, and June 21, 2004, Mercado worked for Manny's, first as a driver and then as an appliance installer. He trained for his job by observing another installer for two weeks. During his time at Manny's, Mercado installed thousands of appliances, including dishwashers, stoves, garbage disposals, and cook tops. The installation work routinely involved cutting and fitting gas pipes, cutting and fitting drain pipes, and running and installing electrical wire. Such work can only be performed legally by a licensed electrician, see G. L. c. 141, § 1A, or a licensed plumber, G. L. c. 142, § 3. Mercado was neither a licensed electrician nor a licensed plumber, nor was he informed as to any provisions of the electrical or plumbing codes. His coworker also was not licensed in those trades. Mercado's supervisor, nevertheless, described Mercado as an "awesome" installer.

In late May, 2004, Bernard Sears, the town of Wilbraham's plumbing inspector, discovered Mercado and his coworker installing a dishwasher in a residence in Wilbraham without a plumber's license and a permit, and ordered them off the job. After hear-

---

[1]The remaining counts of Mercado's complaint were dismissed by agreement of the parties.

ing about what had happened, Manny's service manager told Mercado to stop collecting permits in Wilbraham and to avoid the inspector's truck when he saw it. When Mercado later questioned his supervisor and Manny's general manager, Eric Kosciusko, about whether the installations were legal, Kosciusko acknowledged that he was told that the installations were illegal, and repeated that Mercado should avoid the inspector's truck. Mercado then commented that if the installations were not legal, he "[didn't] feel like [he] should be doing [them] anymore." Kosciusko, angered by Mercado's comments, turned away and continued what he was doing. After the conversation, however, Mercado continued to install appliances in Wilbraham for a short time. To his knowledge, Manny's never obtained permits for this work.

Shortly thereafter, on June 16, 2004, a Wednesday, Mercado injured his knee while lifting a dishwasher at work. He immediately sought treatment at the Riverbend Medical Group in Springfield, and obtained a note from a physician's assistant indicating that he should not work until the following Monday. That same day Mercado also reported his injury to one of his managers, Oscar Alicea, who told him to bring in a doctor's note if he was going to be out of work. When Mercado called Alicea later to tell him that he needed to be out of work for two days, Alicea responded: "What do you mean you can't come in? There is only two installers, just come in. . . . Bring in the note, and we'll talk about it later." When Mercado arrived at work the next day (Thursday), Alicea was not present. Another manager accepted the note, instructed Mercado to get in his truck, and informed Mercado that Alicea would contact him. Mercado, who was paid by the installation, worked a regular day. Toward the end of the day, Alicea told Mercado that only two or three installations were scheduled for Friday, and that Mercado should have his partner "do the big lifting." Mercado did not express objections to Alicea's instructions or to working.

On Monday, June 21, 2004, Manny's fired Mercado. At the time, no reason was given for his termination, but Mercado later learned that the purported reason was that he had called Kosciusko a "f***ing asshole gay," an accusation Mercado denied.[2]

---

[2]On Friday, June 18, Mercado and his coworker, Andy Velez, were in a

There was no evidence of any further communications between Mercado and Manny's regarding a possible return to work.

After his employment at Manny's ended, Mercado continued to receive medical treatment for his knee injury. Magnetic resonance imaging revealed that his anterior cruciate ligament was torn, and Mercado underwent two surgeries to correct his injury. On a subsequent date not in evidence, Mercado also filed a worker's compensation claim relating to the knee injury. In addition to having his medical bills covered, Mercado received a weekly payment for full disability for one to one and one-half years, partial disability for another year, and finally a lump-sum payment.

After Mercado presented his case to the jury, Manny's moved for a directed verdict on all remaining counts of the complaint. After hearing argument, the judge allowed the motion on the ground that Mercado provided insufficient medical evidence that he was handicapped for the purposes of G. L. c. 151B. On the worker's compensation and FMLA claims, the judge likewise ruled on the ground of insufficient medical proof. The judge also determined that a directed verdict was warranted on the public policy count because, contrary to the allegations in his complaint, "[t]here is an absence of showing that [Mercado] was required to continue to violate the law" by performing illegal appliance installations. Further facts will be set forth as necessary.

*Discussion.* "In reviewing a ruling on a directed verdict or a judgment notwithstanding the verdict, the question before us is the same: that is, 'whether anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.' " *Doe* v. *Senechal*, 66 Mass. App. Ct. 68, 76 (2006), quoting from *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). Additionally, "[w]e do not weigh the evidence or consider the credibility of witnesses," and we ignore evidence that contradicts the testimony of the nonmoving party. *Doe* v. *Senechal*, *supra*, quoting from *Conway* v. *Smerling*, 37 Mass. App. Ct. 1, 3 (1994).

---

convenience store between installations and made negative comments about a woman's perfume. The woman apparently called Manny's to complain about their rudeness. After Mercado finished his installations on Friday, Mercado and Kosciusko had a heated exchange about the incident in the office.

1. *Wrongful discharge in violation of public policy.* Mercado argues that a directed verdict was inappropriate because a fact finder could conclude that the work performed by him at the direction of Manny's was a violation of public policy and Manny's terminated him because he did not want to continue violating that public policy. We agree.

"It is well established that Massachusetts law does not protect at-will employees who claim to be fired for their complaints about internal company policies or the violation of company rules, even though the employees' actions may be considered appropriate and 'socially desirable.' " *Falcon* v. *Leger,* 62 Mass. App. Ct. 352, 362 (2004), quoting from *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.,* 404 Mass. 145, 150-151 (1989). See *Mello* v. *Stop & Shop Cos.,* 402 Mass. 555, 560-561 (1988); *Wright* v. *Shriners Hosp. for Crippled Children,* 412 Mass. 469, 474-475 (1992). Nevertheless, "[i]n exceptional cases, for reasons of public policy, an at-will employee may maintain a cause of action and find redress where the termination results from the employee's assertion of some legally guaranteed right, or refusal to engage in illegal or harmful conduct." *Parker* v. *North Brookfield,* 68 Mass. App. Ct. 235, 240 (2007). "In such instances, we look essentially to the substance of the complaint rather than to whom it is presented." *Falcon, supra* at 364. The public policy exception is interpreted narrowly to prevent "conver[sion of] the general rule . . . into a rule that requires just cause to terminate an at-will employee." *King* v. *Driscoll,* 418 Mass. 576, 582 (1994), quoting from *Smith-Pfeffer, supra* at 150.

We begin by determining, as a matter of law, whether the appliance installations were in violation of "a well-defined, important public policy." *Mello, supra* at 561 n.7. There can be no question that the intent of the electrical and plumbing code is to protect public health, safety, and welfare. See generally *Falcon, supra* at 360 (electrical code); *Barriere* v. *Depatie,* 219 Mass. 33, 36 (1914) (licensing requirements for plumbers). Licensure requirements form a critical part of those codes and guarantee that licensed electricians and plumbers have a minimum level of experience in the field. See 248 Code Mass. Regs. § 11.02; *Leduc* v. *Commonwealth,* 421 Mass. 433, 435 (1995), cert. denied, 519 U.S. 827 (1996) ("The historical aim

of licensure generally is preservation of public health, safety, and welfare by extending the public trust only to those with proven qualifications"), citing *Levy* v. *Board of Registration & Discipline in Med.*, 378 Mass. 519, 527-528 (1979). The importance of licensed electricians and qualified plumbers is underscored here by Mercado's testimony that during an installation of a gas stove, he caused a gas leak, requiring the daughter of a customer to seek medical care. According to Mercado, this was only one of multiple incidents of gas leaks following appliance installations that he performed.

The evidence demonstrates that Manny's was aware that at least some of its appliance installations were illegal and in violation of public policy. Mercado and his coworker collected permits and engaged in serious plumbing and electrical work in performing their jobs at Manny's, despite the fact that neither one of them had an electrical or plumbing license.[3] Sears, the plumbing inspector, confirmed that Mercado's installations were against the law. According to Sears, the Massachusetts Plumbing Code, 248 Code Mass. Regs. §§ 2.04 et seq.,[4] governs the types of installations Mercado performed, and requires that they be performed by a licensed plumber with a permit, "[t]o protect the safety and health of the public." Wilbraham's building inspector, Lance Trevallion, further testified that he informed Manny's, after the inspection incident, that "a permit was required for such work, and a licensed plumber needed to take the permit out." An inference could be drawn that Kosciusko received that information when he told Mercado that "they are . . . saying that what Manny's is doing there is illegal." The instruction to Mercado that he avoid the Wilbraham plumbing inspector also supports the conclusion that Manny's was aware that the installations were illegal. No permits were issued for the installations that occurred in Wilbraham after Trevallion's discussion with Manny's.

---

[3]Manny's did have on staff one licensed plumber who would take care of the permits and "spot check" installations.

[4]During Mercado's employment at Manny's, 248 Code Mass. Regs. § 2.04 (1996) was the effective regulation concerning permits, and was entered into evidence. For the purposes of this case, any differences between the present regulations and those that existed at the time of Mercado's employment are immaterial.

We conclude that the circumstances of this case are akin to those in cases in which courts have found a violation of public policy within the narrow strictures of the exception to the rule of at-will employment. Compare *Hobson* v. *McLean Hosp. Corp.*, 402 Mass. 413, 416 (1988) (hospital employee responsible for enforcing State fire safety regulations governing patient care, who performed her job accordingly and was fired, stated claim for wrongful termination); *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 810-811 (1991) (summary judgment properly denied where factual dispute remained whether employee was discharged in retaliation for his cooperation with a law enforcement investigation); *Falcon, supra* at 363-365 (employee wrongfully terminated after he refused to lie to inspector about existence of electrical code violations). The violation here is also distinct from internal policy matters, which do not warrant recovery by an at-will employee. Contrast *Mello* v. *Stop & Shop Cos., supra* at 560-561 (report of false damage claims was internal company matter); *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. at 150-151 (opposition to internal restructuring of a State school); *Wright* v. *Shriners Hosp. for Crippled Children*, 412 Mass. at 474-475 (nurse's report to a private professional organization about perceived managerial inadequacies at hospital was internal matter); *Mistishen* v. *Falcone Piano Co.*, 36 Mass. App. Ct. 243, 245-246 (1994) (complaints regarding company's trade practices, which employee claimed violated G. L. c. 93A, were internal matter).

Lastly, whether there was sufficient evidence that Mercado adequately refused to engage in further illegal activity such that it was a factor in his termination is a factual question for the jury. Mercado presented evidence that he told Kosciusko that he did not want to continue performing illegal installations, was ordered to continue illegally installing appliances, and was fired a few weeks after his complaint. Mercado disputes Manny's stated reason for firing him, but as previously noted on a motion for a directed verdict, we must ignore evidence that contradicts the testimony of the nonmoving party, here Mercado. The evidence presented on Mercado's public policy claim is sufficient to withstand a motion for a directed verdict.

2. *Discrimination claims.* Mercado next claims that he was the subject of handicap discrimination and retaliatory termination in violation of G. L. c. 151B; G. L. c. 152, § 75B(2); and the FMLA. Each claim is based upon Manny's "denial" of Mercado's request for a two-day leave.

To prevail on his handicap discrimination claim under G. L. c. 151B, § 4(16), Mercado must demonstrate that he has a qualifying handicap under the statute. Pursuant to G. L. c. 151B, § 1(17), an employee has a "handicap" if he or she (1) has a physical or mental impairment that substantially limits one or more major life activities, (2) has a record of such an impairment, or (3) is regarded by the employer as having such an impairment. See *New Bedford* v. *Massachusetts Commn. Against Discrimination*, 440 Mass. 450, 463 (2003). More than a mere medical diagnosis of an impairment is required to show a handicap covered by the statute; an employee must show, by reference to his own experience, that the extent of the limitation caused by his impairment is substantial. *Ibid.* In this case, Mercado claims handicap status under the first prong of the statute. We conclude that he has failed to demonstrate that he suffered from a handicap during his employment at Manny's.

In order to be considered substantially limited in the major life activity of working, the employee must be able to show that his impairment prevented or restricted him from performing a class of jobs or broad range of jobs in various classes. See *New Bedford, supra* at 464; *Ocean Spray Cranberries, Inc.* v. *Massachusetts Commn. Against Discrimination*, 441 Mass. 632, 637-641 (2004); *Dube* v. *Middlesex Corp.*, 59 Mass. App. Ct. 734, 737 (2003). Here, Mercado testified that his knee injury affected his ability to lift and his mobility. He also testified, however, that he worked the two days following his injury as normal, with no objection. The fact that Mercado worked at his job as usual, despite his injury, severely undercuts his claim that he was handicapped at that time. Because Mercado failed to offer any evidence that he was unable to do his job, or that Manny's perceived him as being unable to do so, the judge properly entered a directed verdict on Mercado's G. L. c. 151B handicap discrimination claim.[5,6]

---

[5]The record contains no evidence that Mercado claimed handicap status or

Mercado's claim under the FMLA fails for the same reason. The FMLA provides that an eligible employee shall be entitled to a total of twelve weeks of leave during any twelve-month period because of a serious health condition that inhibits the employee from working. See 29 U.S.C. § 2612(a)(1)(D). In order for his injury to be considered a serious health condition, the employee must receive in-patient care or continuing treatment from a health care provider, as those terms are defined in the regulations. 29 U.S.C. § 2611(11). 29 C.F.R. § 825.113-115. As is relevant here, continuing treatment by a health care provider requires a period of incapacity that lasts more than three consecutive calendar days and involves medical treatment.[7] 29 C.F.R. § 825.115(a). See *Hodgens* v. *General Dynamics Corp.*, 144 F.3d 151, 159-160 (1st Cir. 1998); *Wheeler* v. *Pioneer Developmental Servs.*, 349 F. Supp. 2d 158, 165 (D. Mass. 2004). Thus, Mercado has no cause of action under the FMLA unless there is evidence from which a reasonable jury could find that he was incapacitated for more than three consecutive days. Mercado testified he worked the Thursday and Friday following his injury, despite the note he received from a physician's assistant stating that he should refrain from working until Monday, June 21. Based on that testimony, as a matter of law, Mercado failed to prove that he was inhibited from working as required by the FMLA. See *Peterson* v. *Exide Corp.*, 123 F. Supp. 2d 1265, 1271 (D. Kan. 2000) (finding employer was not bound by medical

sought reinstatement or any other accommodations from his employer at any point from his termination until this lawsuit. See *Russell* v. *Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 453-458 (2002) (employee has duty to make initial request for accommodation). Massachusetts law differs from Federal law on this point. See *Mammone* v. *President & Fellows of Harvard College*, 446 Mass. 657, 669 n.25 (2006).

[6]Mercado's retaliatory discharge claim likewise fails. Because Mercado failed to show that he was handicapped during the term of employment following his injury, there was no basis for a retaliatory discharge claim. Simply put, as Mercado missed no work due to his claimed handicap, there was cause to fire him on those grounds. See G. L. c. 151B, § 4(1); *Pontremoli* v. *Spaulding Rehabilitation Hosp.*, 51 Mass. App. Ct. 622, 625 (2001).

[7]A period of incapacity lasting less than three days may also qualify as a serious health condition when it is due to a chronic condition. See 29 C.F.R. § 825.115(c),(f). There is nothing in the record indicating that Mercado had a chronic serious health condition, as it is defined in the regulations, during his employment at Manny's. See 29 C.F.R. § 825.115(c)(1)-(3).

evidence when plaintiff's own behavior indicated he did not have a serious health condition).[8]

Moving to Mercado's G. L. c. 152, § 75B(2), claim, under that statute an employer shall not discharge an employee for exercising any right under the worker's compensation act. Mercado, however, took no action under the act until after he had been terminated. Other than the timing of the termination, Mercado offers no evidence of a connection between his worker's compensation claim and his discharge. Given that his claim was filed after his discharge, without further proof, we fail to see how Mercado's discharge could possibly be related to any exercise of his rights under the worker's compensation act. See *Piderit* v. *Siegal & Sons Invs., Ltd.*, 55 Mass. App. Ct. 1, 5-6 (2002) (fact that the employer fired the employee shortly after his injury was insufficient by itself to show causal connection when worker's compensation claim filed after termination). Mercado's § 75B(2) claim accordingly fails.

3. *Exclusion of employee handbook.* Mercado lastly challenges the judge's exclusion of Manny's employee handbook from evidence on the basis that there was no evidence that Mercado was aware of it, or operated under its provisions during his employment. Mercado supports his argument by noting that the handbook was a stipulated exhibit. Regardless of that fact, Mercado testified that he never saw the employee handbook during his employment, but only first looked at it after his termination. Nevertheless, even if the judge did err in excluding the handbook, Mercado has made no attempt to show that its exclusion was prejudicial to his case. See G. L. c. 231, § 119; *Cohen* v. *Liberty Mut. Ins. Co.*, 41 Mass. App. Ct. 748, 752 (1996), quoting from *DeJesus* v. *Yogel*, 404 Mass. 44, 48-49 (1989).

4. *Conclusion.* The portion of the judgment that pertains to Mercado's public policy claim is reversed, and that count is remanded to the trial court for a new trial. The judgment is affirmed in all other respects.

*So ordered.*

---

[8]Because it is clear that Mercado was not incapacitated for three consecutive days as required under the statute, we need not decide whether the note from the physician's assistant was sufficient documentation of a serious health condition.