NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-191

HEATHER MINTON & another[1]

vs.

INDUSTRIAL DEMOLITION LLC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After the termination of their employment by the defendant, Industrial Demolition LLC (Industrial), the plaintiffs, Heather and William Minton,[2] filed a complaint in Superior Court alleging, among other things, that they were wrongfully terminated in violation of public policy.[3]  Industrial filed a motion for summary judgment.  The judge concluded that the Mintons' claims of wrongful termination failed as a matter of

---

[1] William Minton.

[2] As the plaintiffs share the same last name, we refer to them by their first names for ease of reference.

[3] A prior complaint also alleged claims of quantum meruit and the manager of Industrial, Michael Roberts, was named as a defendant.  These claims were dismissed by agreement as were all claims against Roberts.

law and allowed the motion on all remaining counts.[4]  This appeal
ensued.

Background.  We summarize the relevant material facts from
the summary judgment record viewed in the light most favorable
to the plaintiffs as the nonmoving parties.  See Juliano v.
Simpson, 461 Mass. 527, 529 (2012).  Industrial is a demolition
company with its principal place of business in St. Louis,
Missouri.  It demolishes and redevelops properties throughout
the United States, hiring employees to move across the country
to work on its various projects.  In September 2019, Industrial
hired William, a heavy equipment operator, to work on a
demolition project at Brayton Point in Somerset, Massachusetts
(project).  Industrial also hired William's wife, Heather, to
serve as the safety director on the project and to help develop
a company safety program.  There is no dispute that the
plaintiffs were hourly, at-will employees and that neither of
them had an employment contract with Industrial.

In November 2019, Industrial became the subject of an
Occupational Safety and Health Administration (OSHA) complaint.
Industrial placed Heather in charge of facilitating OSHA's
investigation, which was resolved successfully during the summer

---

[4] The Mintons did not oppose summary judgment with respect
to their breach of contract claims.  Thus, only their claims
alleging wrongful termination in violation of public policy are
before us.

of 2020. Heather did not file any internal or external complaint regarding an OSHA violation during her employment with Industrial. However, shortly after her employment was terminated in August 2020, she filed a whistleblower complaint with OSHA and then withdrew it thirteen months later. Additionally, in June and July 2020, while the OSHA investigation was pending, she reported two unrelated incidents to her superiors: (1) a haul truck driver, who was not an Industrial employee, was speeding at the worksite and almost struck her; and (2) another independent contractor took a photograph of her license plate and followed her in an attempt to intimidate her. Neither incident was reported to law enforcement or any other external entity; however, Heather filed an internal safety report regarding the first matter.

As noted, William worked as a heavy equipment operator. On April 21, 2020, William's supervisor, Roger Oberkramer, was asked to leave the worksite based on a complaint lodged by another employee. William was promoted to fill Oberkramer's position. When Oberkramer refused to leave, he and William argued and Oberkramer threatened him and Heather. William notified his superiors of the argument and threat. Oberkramer was allegedly the subject of additional complaints by his subordinates. Industrial transferred Oberkramer to a different job site but did not fire him.

3

Soon after William was promoted, between June and August 2020, the project began to wind down and Industrial started to transfer equipment to another smaller project in Fox Lake, Minnesota. The Mintons expected to be selected for that project, and they explored various living accommodations in Minnesota. As it turned out, they were not asked to work on the new project. In August 2020, Industrial informed the Mintons and other employees that the project was nearly complete, and soon, their services would no longer be needed. Industrial put Oberkramer in charge of the Minnesota project, and did not hire a safety coordinator for it.

As previously noted, the Mintons contend that the termination of their employment was in violation of public policy and, consequently, the judge erred in granting summary judgment in favor of Industrial. We conclude otherwise.

Discussion. "We review the disposition of a motion for summary judgment de novo, to determine whether all material facts have been established such that the moving party is entitled to judgment as a matter of law" (citation omitted). American Int'l Ins. Co. v. Robert Seuffer GMBH & Co., 468 Mass. 109, 113 (2014), cert. denied, 574 U.S. 1061 (2014). Although our review is de novo, we reach the same conclusion as the judge for the reasons articulated in her well-reasoned memorandum of decision and order.

4

As the judge explained, Heather claims that she was fired in retaliation for raising safety concerns and for her involvement in the OSHA investigation. William argues he was fired because Industrial preferred that Oberkramer, who was less safety conscious, supervise the project in Minnesota. Neither claim can survive summary judgment.

As an initial matter, "[s]ubject to rare public policy exceptions, employment at will can be terminated for any reason or for no reason." Harrison v. NetCentric Corp., 433 Mass. 465, 478 (2001). The public policy exception applies in circumstances where an employee is terminated for "asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 472 (1992), quoting Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 149-150 (1989). The exception generally does not apply where an employee is fired after lodging a complaint based on "the internal administration, policy, functioning, and other matters of an organization." King v. Driscoll, 418 Mass. 576, 583 (1994), S.C., 424 Mass. 1 (1996).

Here, to the extent that Heather bases her claim of wrongful termination on the safety report she filed in June

2020, her argument fails because the report constitutes an unactionable complaint about internal matters. See Smith-Pfeffer, 404 Mass. at 151 ("internal matters, including internal policies, could not be the basis of a public policy exception to the at-will rule"); Mello v. Stop & Shop Cos., 402 Mass. 555, 558-559 (1988) (no public policy claim where plaintiff told superiors about other employees' false damage and shortage claims against company's warehouse, manufacturers, and suppliers). To the extent that Heather bases her claim on her involvement with the OSHA investigation, her claim also fails because (1) she did not file an OSHA complaint until after she was terminated, and (2) she was never in an adversarial relationship with Industrial during the investigation. Contrast Flesner v. Technical Communications Corp., 410 Mass. 805, 807 (1991) (issue of material fact existed where employee claimed that termination was "motivated by a desire to interfere with or retaliate for his cooperation with the [ongoing governmental] investigation"). As the judge aptly observed, "[n]o reasonable jury could infer that [Heather] was terminated for serving as the point of contact for OSHA where she was designated the role by Industrial Demolition, and she obtained a favorable outcome to its benefit."

With respect to William, we again agree with the judge who observed that "there is no evidence in the record from which a

6

jury could reasonably infer that [William's] termination was a result of his complaint about Mr. Oberkramer."  Furthermore, even if we were to assume that such an inference were reasonable, William's complaint regarding Oberkramer, like Heather's safety reports, constitutes an internal complaint for which there is no redress under the public policy exception.[5] Accordingly, we affirm the grant of summary judgment in favor of Industrial.

<u>So ordered</u>.

By the Court (Vuono,
  Brennan & D'Angelo, JJ.[6]),

Clerk

Entered:  April 24, 2025.

---

[5] The Mintons' reliance on <u>Mercado</u> v. <u>Manny's T.V. & Appliance, Inc</u>., 77 Mass. App. Ct. 135, 139 (2010), is misplaced.  In that case, the plaintiff was terminated after refusing to install appliances because he did not have the requisite licenses.

[6] The panelists are listed in order of seniority.

7